UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

Lois Mae Stark,                                 Bankruptcy No. 08-30956
                                                                        Chapter 7

                 Debtor.
_____/

Brian Pinks,

                 Plaintiff,

                 vs.                                   Adversary No. 08-7036

Lois Mae Stark,

                 Defendant.
_____/

## MEMORANDUM AND ORDER

By complaint filed December 11, 2008, Plaintiff Brian Pinks initiated this adversary proceeding seeking determinations that a debt owed by Debtor/Defendant Lois Mae Stark is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and that Defendant be denied a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4). Defendant filed her answer on January 28, 2009. Defendant filed a motion for partial summary judgment on March 11, 2009, moving the Court to find as a matter of law that Plaintiff failed to prove the elements for nondischargeability under 11 U.S.C. § 727(a) (4). Plaintiff filed a response to Defendant's motion for summary judgment on March 26, 2009. The Court granted Defendant's motion for partial summary judgment as to the action under 11 U.S.C. § 727(a)(4). A trial was held on May 6, 2009, on Plaintiff's remaining claim under section 523(a)(2)(A).

## FINDINGS OF FACT

Plaintiff owned a four-plex residential apartment house and listed the four-plex on the market for sale with realtor Chris Irwin. Realtor Irwin testified that she has been a realtor for over 30 years, is self-employed, and works out of Oak Tree Realtors' office. Realtor Irwin found Defendant as a buyer

for Plaintiff's property. The parties signed a dual agency agreement on August 5, 2005, allowing Oak Tree Realtors to represent both of them. On the same date, the parties entered into a purchase agreement whereby Plaintiff agreed to sell a four-plex residential apartment house to Defendant for $119,900.00. The purchase agreement reiterated that Realtor Irwin was representing both parties in the transaction. The purchase agreement detailed the following special conditions:

> earnest money to be refunded if buyer is unable to obtain financing. Buyer to move in 8-8-05. Seller to scrape and repaint house and repair windows, repair porch in front. Seller to remove dryer and refrigerator that doesn't work.

Realtor Irwin testified that Defendant was able to secure financing for a first mortgage from Washington Mutual for approximately eighty percent of the $119,900.00 purchase price, but she was unable to secure financing for the remaining twenty percent. Realtor Irwin facilitated discussions between the parties regarding how Defendant was going to secure the shortfall. Plaintiff agreed to loan Defendant the $23,880.00 needed to close in exchange for Defendant executing a second mortgage in Plaintiff's favor. Realtor Irwin testified that Defendant verbally agreed to those terms.

The closing took place at North Dakota Guarantee and Title Company on October 17, 2005. The parties present at the closing included Plaintiff, Defendant, Realtor Irwin, and an agent from the title company. Realtor Irwin testified that mortgage broker Joe Sheehan was also present for a short time at the beginning of the closing and another individual stood in for him for the remainder of the closing. The title company provided the closing documents including a settlement statement, borrower's statement, mortgage deed and warranty deed.

At the closing, Defendant signed a settlement statement detailing a purchase price of $119,900.00, and a gross amount due by Defendant of $124,688.82. The settlement statement reflects that Plaintiff holds a second mortgage in the amount of $23,880.00. Defendant also signed a borrower's statement reflecting Plaintiff as the holder of a second mortgage in the amount of $23,880.00.

2

Lastly, Defendant was given a mortgage deed to sign. The mortgage deed listed Defendant as borrower and Plaintiff as the lender in the amount of $23,880.00 on the four-plex. The mortgage deed included special terms and conditions in handwritten notes in incomplete sentence form stating, "½ roof shingles & painting home to subtracted from the $23,880, painting home to subtracted from the $23,880. Painting to be $4380 seller to have final. . . (illegible). . . of shingles/roofing". Realtor Irwin testified she wrote the handwritten notes on the mortgage deed at the closing. At the closing, Defendant initialed the handwritten special terms and conditions on the mortgage deed but did not sign the mortgage deed. Defendant did not inform anyone that she did not sign the mortgage deed.

Defendant testified that she did not agree with the mortgage deed because it did not reflect a number of special terms and conditions that she thought should be have been included. First, Defendant testified she believed the amount of the shingling should have been included. She thought she was supposed to get shingling bids prior to the closing and bring them to the closing. Defendant brought them to the closing but did not inform anyone at the closing that she had the shingling bids with her. Plaintiff testified that it was his understanding that Defendant was to get bids for the shingling after the closing and that Plaintiff would be allowed to submit his own personal bid for the shingling as the final bid.

Defendant testified that another reason she did not sign the mortgage deed was because it did not reflect three tenant deposit checks and partial rent for the month of October 2005. Plaintiff testified that the two lower unit tenants had each paid a $400.00 deposit and the tenant of the larger upper unit had paid a $600.00 deposit. Defendant testified that she expected to receive a check from Defendant at the closing for the deposits and also for partial rent for October. Defendant testified that Plaintiff left the closing to get his checkbook but returned stating he did not have it with him. Defendant further testified that Plaintiff stated he would bring the checks to her by 8:00 that night. Defendant said that she did not sign the second mortgage because she did not receive the deposits and rents from Plaintiff and that she thought they would

3

settle the matter that evening when Plaintiff brought over the checks. Defendant also testified, however, that she knew the sale would not have gone through if there was no second mortgage. Defendant testified that she informed Realtor Irwin at the end of the closing that she would not sign the second mortgage and that Plaintiff might have left at that point.

Plaintiff, on the other hand, testified that he did not leave the closing at any time to retrieve a checkbook and that he did not leave the closing until it was over. He thought everyone left the closing at the same time. Plaintiff testified that the deposits for the three rental units and the partial rent were not mentioned during the closing, nor were they part of the purchase agreement. He testified that the discussion relating to deposits and rent happened after the closing. Plaintiff testified that he believed Defendant had signed the mortgage deed and he would not have signed the warranty deed had he known that Defendant had in fact not signed the mortgage deed.

Realtor Irwin testified that Defendant did not inform her or anyone else at the closing that she had a problem with the mortgage deed, that she would not sign the mortgage deed, or that she was leaving the closing without signing the mortgage deed. Had she known Defendant was not going to sign the second mortgage, Realtor Irwin stated she would have stopped the closing, and they would not have gone through with the sale. Realtor Irwin testified when she left the closing, she had every reason to believe all the documents were signed, and that she would not have left had she known Defendant had not signed the mortgage deed.

Realtor Irwin further testified that it was closing agent's responsibility, not hers, to make sure all the documents were properly signed. She testified that it must have been an error on the title company's part to deliver the warranty deed when Defendant had not signed it because of the provisions throughout the closing statement relating to the mortgage deed. Neither party presented any testimony by a representative from the title company.

4

Defendant testified that approximately a week after the closing, she called Realtor Irwin and Broker Sheehan to find out what to do about the deposit checks that Plaintiff owed the tenants. Defendant testified that both of them told her to get the issue regarding the checks worked out with Plaintiff.

Plaintiff testified that he did not learn until months later, when he became concerned about Defendant's payments on the second mortgage, that the mortgage deed had not been signed. In January 2006, Plaintiff brought the mortgage to Defendant for her to sign, but she asked Plaintiff to come back the next day when her friend, Jake Rothschiller, could be there. Defendant testified she wanted Rothschiller present because "he was smarter about this kind of stuff." Defendant testified that Plaintiff returned the following day, agreed to make some changes to the mortgage deed, and never brought it back.

Plaintiff's bid for the shingling repair, dated January 26, 2006, was $5,280.00 and showed Defendant's cost owing to Plaintiff estimated to be one-half the amount, or $2,640.00. Defendant testified that she did not recall ever seeing Plaintiff's bid.

Plaintiff called Defendant on February 24, 2006, and the parties agreed to meet at Defendant's place of employment the following day. At the meeting, Plaintiff gave her a check for $800.00 for two of the three rental unit deposits. Defendant testified that she informed Plaintiff this was not the correct amount owed and that she would not sign the mortgage deed. Plaintiff explained that he gave Defendant a check for only $800.00 for the deposits owed to the two tenants from the two lower units because the tenant in the upstairs unit caused damage to the unit that far exceeded the $600.00 deposit and Plaintiff did not return the deposit to that tenant.

On June 4, 2006, Defendant's attorney, who is also Defendant's son, sent a letter to Plaintiff's attorney at the time. In the letter, Defendant's attorney stated that Defendant's second mortgage is to be in the amount of $23,880 if Plaintiff agreed that he owed Defendant the sum of $10,322.17 for the following items:

5

| | |
|---|---|
| Partial October rent for units 2-4 | $ 657.17 |
| Deposit for unit 2 | $ 600.00 |
| Deposit for unit 3 | $ 400.00 |
| Deposit for unit 4 | $ 400.00 |
| 50% of the shingling bid | $ 3,885.00 |
| (from Goldammer Contracting- $7,770) | |
| Painting Bid | $ 4,380.00 |

Further, Defendant's attorney stated that if Plaintiff agreed with those terms, they could get the paperwork done and the mortgage deed signed and completed.

Defendant filed a Chapter 7 bankruptcy petition on September 26, 2008, listing the four-plex residential apartment house as real property with a current value of $98,000.00, and Starion Bank holding a secured claim against the property in the amount of $105,000.00. Defendant listed Plaintiff as a creditor holding an unsecured nonpriority claim in the amount of $16,600.00. In her petition, Defendant stated, "Debtor purchased four-plex from Pinks. Pinks agreed to carry debtor for balance of selling price less cost of repairs. Debt in dispute. Pinks defaulted."

There is no evidence as to whether Defendant made any payments to Plaintiff on the loan.

CONCLUSIONS OF LAW

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr. D.N.D. 1999). Where an objecting plaintiff fails to establish every element under section 523(a), the indebtedness at issue is dischargeable. Id.

6

Section 523(a) of the Bankruptcy Code exempts certain debts from discharge in bankruptcy, including debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability under section 523(a)(2)(A), a creditor must prove five factors by a preponderance of the evidence. In 2000, the Eighth Circuit Bankruptcy Appellate Panel outlined the five factors as follows:

(1) the debtor made a representation;
(2) at the time the representation was made the debtor knew it was false;
(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;
(4) the creditor justifiably relied on the representation; and
(5) the creditor sustained the alleged loss as the proximate result of the representation having been made.

Burt v. Maurer (In re Maurer), 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); Simek v. Erdman, (In re Erdman) 236 B.R. 904, 910 (Bankr. D.N.D. 1999). In 2007, however, the Eighth Circuit Bankruptcy Appellate Panel shortened the fifth element to read, "(5) the creditor was damaged" without any discussion or rationale as to the deletion of the language that the loss was a "proximate result of the representation having been made." Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). This Court notes that there has been an evolution in the law, however, it is unclear whether the shortening of the fifth factor was an intended deletion or an oversight. This Court further notes that In re Maurer, is still good law, as it has no negative citing or criticism, nor has it been overturned.

A.    Representation and Falsity

Plaintiff argues that Defendant represented she was going to sign the mortgage deed and that she failed to inform anyone that she did not sign the mortgage deed. Further, Plaintiff argues Defendant had a duty to speak.

7

Section 523(a)(2)(A) includes both false representation, which is an express misrepresentation, and false pretense, which involves "an implied misrepresentation or conduct intended to create and foster a false impression." Finch v. Finch (In re Finch), 289 B.R. 638, 643 (Bankr. S.D. Ohio 2003); Rainer Title Co., Inc. v. Demarest (In re Demarest), 176 B.R. 917, 920 (Bankr. W.D.Wash. 1995). It is well settled that mere silence of a material fact can constitute a false representation and is actionable under section 523(a)(2)(A). Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987) (overturned on other grounds).

It is undisputed that the parties signed a purchase agreement with a purchase price for the four-plex in the amount of $119,900.00 with special conditions that Plaintiff was to repair specific items and repaint. It is also undisputed that Defendant could not secure financing for the total purchase agreement price and that Plaintiff would carry Defendant for the remaining amount and hold a second mortgage. The parties also agree that at the closing, Defendant represented on at least two documents that Plaintiff would hold a second mortgage on the property. Testimony also demonstrates that Defendant was given the mortgage deed to sign, but she did not sign it. She did not inform anyone that she did not sign the mortgage deed or that she disagreed with the terms. She did not stop the closing, and instead acted as though nothing was amiss. In this case, Defendant's silence created a false impression that she signed the mortgage deed when in fact she did not. Defendant's silence constitutes a false representation.

    B.    Intent to Deceive

Intent may be inferred from a debtor's actions at the time of and subsequent to the loss. In re Finch, 289 B.R. at 643. A court is to "consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive creditor." Crawford v. Monfort (In re Monfort), 276 B.R. 793, 796 (Bankr. N.D. Ohio 2001).

<u>In re Demarest</u> involved a case where the debtors did not inform the buyers at a real estate closing of encumbrances on the property. 176 B.R. at 920. The court found intent to deceive could be inferred from the facts that the debtors received money at the closing that they would not have obtained absent their silence, and the debtors remained silent despite knowing that either the holder or title insurer would bear the resulting loss. <u>Id.</u>

In this case, in every stage prior to the closing, Defendant gave every indication that she intended to sign the second mortgage based upon the terms in the purchase agreement. At the closing, Defendant still gave no indication that she disagreed with the special terms. To the contrary, Defendant initialed the special terms in the mortgage deed yet cited the special terms at trial as the reason for not signing. Defendant stipulated to the fact that Plaintiff would not have signed the warranty deed had he known that Defendant was not going to sign the second mortgage. Defendant knew the closing would not go through if Plaintiff was not a secured holder of a second mortgage. Therefore, this Court finds Defendant, through her silence, subjectively intended to deceive Plaintiff at the time of closing.

    C.    Reliance

As to the element of reliance, the parties stipulated that Plaintiff would not have signed the warranty deed had he known that Defendant was not going to sign. The evidence demonstrates that Plaintiff relied on the fact that Defendant represented she signed the mortgage deed at the closing when she had not in fact signed.

    D.    Loss

Plaintiff argues that he has sustained a loss due to the representation Defendant made. This Court has already found, by separate order, that Plaintiff is an unsecured creditor, not a secured creditor holding a second mortgage. The evidence demonstrates that Plaintiff's status as an unsecured creditor is due to Defendant's silence at the closing. Had Defendant spoken up at the closing, Plaintiff would either be a

secured creditor of Defendant's or no creditor at all. Therefore, Plaintiff has sustained a loss due to Defendant's silence.

The only issue remaining in dispute is the amount of the loan. Plaintiff argues that the amount should be $23,880.00 minus the painting in the amount of $4,380.00, plus half of his shingling bid in the amount of $2,650.00 for a total amount of $22,150.00, plus interest. Defendant suggests the amount of the loan should have been for $23,880.00 minus the painting in the amount of $4,380.00 minus half the shingling bid she received in the amount of $3,885.00, minus rents in the amount of $657.17 and the remaining deposit in the amount of $600.00, for at total amount of $14,357.83.

With regard to the shingling bids, the parties agree that Plaintiff was to be allowed to submit his own bid for shingling. Considering that the parties have not been able to work this matter out over the past three and a half years, it is unlikely that the parties will work well together at this juncture in order for Plaintiff to complete the shingling on Defendant's four-plex. Therefore, the Court finds that Defendant's bid from Goldammer Contracting in the amount of $7,770.00 is the best available shingling estimate and $3,885.00 shall be subtracted from the loan amount for the fifty percent that Plaintiff owes.

As for the one remaining rental deposit and the partial rents, the evidence demonstrates that those negotiations were separate and independent of the purchase agreement. There is evidence that Plaintiff gave a check to Defendant for two of the three rental units. Further, there is testimony that the damage caused to the remaining unit exceeded the value of the $600.00 deposit, and there is no evidence that Defendant refunded the $600.00 to the tenant on behalf of Plaintiff. Even if this Court were to determine that Plaintiff had a duty to refund any portion of the deposit for the remaining unit, that duty is owed to the tenants, not to Defendant. As for the remaining partial rent in the amount of $657.17, it was not part of the purchase agreement and the testimony demonstrates that it was not part of the closing. The Court

finds that the amount of Plaintiff's claim is $23,880.00 minus the cost of repainting ($4,380.00) minus Plaintiff's half of the shingling ($3,885.00) for a total of $15,615.00, plus interest.

Based on the foregoing, the debt owed by Defendant Lois Mae Stark to Plaintiff Brian Pinks in the amount of $15,615.00 plus interest is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A).

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this June 9, 2009

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**